UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

RUSSELL R. JAGDEO,                        )
                                          )
            Plaintiff,                    )
                                          )
v.                                        )          No. 3:17-CV-469-TWP-DCP
                                          )
NANCY A. BERRYHILL,                       )
Acting Commissioner of Social Security,   )
                                          )
            Defendant.                    )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings

and Memorandum in Support [Docs. 17 & 18] and Defendant's Motion for Summary Judgment

and Memorandum in Support [Docs. 22 & 23].  Russell Ramchand Jagdeo ("Plaintiff") seeks

judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of

Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner").

For the reasons that follow, the Court will **RECOMMEND** that Plaintiff's motion be **GRANTED**

**IN PART**, and the Commissioner's motion be **DENIED**.

## I.      PROCEDURAL HISTORY

On March 11, 2014, Plaintiff protectively filed an application for disability insurance

benefits and supplemental security income benefits pursuant to Title II and XVI of the Social

Security Act, 42 U.S.C. §§ 401–03, 1381–85, claiming a period of disability that began on

December 23, 2012.  [Tr. 10, 102–03].  After his application was denied initially and upon

reconsideration, Plaintiff requested a hearing before an ALJ.  [Tr. 118–19].  A hearing was held

on March 22, 2016.  [Tr. 27–53].  On July 22, 2016, the ALJ found that Plaintiff was not disabled.

[Tr. 10–19].  The Appeals Council denied Plaintiff's request for review on September 5, 2017 [Tr.

1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court

on October 31, 2017, seeking judicial review of the Commissioner's final decision under Section

405(g) of the Social Security Act.  [Doc. 1].  The parties have filed competing dispositive motions,

and this matter is now ripe for adjudication.

## II.     ALJ FINDINGS

The ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2018.

2.  The claimant has not engaged in substantial gainful activity since December 23, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments:  degenerative disc disease status post discectomy, laminectomy, and lumbar fusion; and degenerative joint disease in the shoulder (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a less than full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).  The claimant can lift 10 pounds occasionally and less than 10 pounds frequently.  The claimant can occasionally perform postural activities but never climb ladders, ropes, or scaffolds; and can occasionally bend or twist.

2

6.  The claimant is unable to perform any past relevant work.  (20 CFR 404.1565 and 416.965).

7.  The claimant was born on June 16, 1966 and was 46 years old, which is defined as a younger individual age 45–49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  The claimant has acquired transferrable work skills from past relevant work that would allow him to work at occupations within his residual functional capacity (20 CFR 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a), 404.1568(d), 416.969, 416.969(a), and 416.968(d)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from December 23, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 12–18].

## III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence.  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

3

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

4

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

5

## V.     ANALYSIS

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence on several regards.  First, Plaintiff challenges the ALJ's treatment of the medical opinions of record.  [Doc. 18 at 12–17].  Next, Plaintiff asserts that the ALJ improperly failed to account for his use of a walker in the RFC determination.  [*Id.* at 18–20].  Lastly, Plaintiff submits that the ALJ's rejection of Plaintiff's subjective allegations is not supported by substantial evidence.  [*Id.* at 21–25].  The Court will address each allegation of error in turn.

### A.     Medical Opinions

#### 1.     Dr. Grewal

First, Plaintiff maintains that the ALJ failed to properly evaluate and weigh the opinion of his orthopedic surgeon, Kanwarpaul Grewal, D.O.  [Doc. 18 at 12–14].  The Court will first review the relevant medical evidence, and then address Plaintiff's arguments.

Plaintiff was referred to Dr. Grewal by his treating physician, Dr. Silverman, for a surgical consultation on February 5, 2015.  [Tr. 499–500].  Dr. Grewal noted that Plaintiff's "symptoms started after a physical assault by his manager/supervisor [in 2012]," and that "Plaintiff has been markedly disabled since this injury" with "severe back pain, bilateral leg pain," as well as pain in the back and front of the legs, and spasms, numbness, and tingling in the legs.  [Tr. 499].  Upon examination, Dr. Grewal noted that Plaintiff exhibited "[m]ultilevel" degenerative disc disease "in lumbar spine with mild lateral recess stenosis or foraminal stenosis at other levels," and an x-ray of Plaintiff's lumbar spine found L4-5 spondylolisthesis and multilevel spondylosis.  [*Id.*].  Dr. Grewal also reviewed a new MRI of Plaintiff's lumbar spine from February 4, 2015, and noted "stenosis from L3-L5 (moderate-severe)," and lumbar spondylolisthesis, L4-L5 grade 1 on MRI. [*Id.*].  Accordingly, Dr. Grewal stated that Plaintiff had failed non-operative treatment options and

6

would benefit from lumbar decompression and lumbar fusion surgery. [Tr. 499–500]. Plaintiff continued to see Dr. Silverman before his surgery, and on July 15, 2015, Dr. Silverman noted that Plaintiff "is disabled from work activities" and "postoperative his work status will be deferred to" Dr. Grewal. [Tr. 492–93].

Plaintiff then attended a pre-surgical visit with Dr. Grewal on July 14, 2015. [Tr. 406]. On July 21, 2015, Plaintiff underwent surgery with Dr. Grewal, including a discectomy at L4-L5, laminectomy at L4, and lumbar fusion at L4-L5. [Tr. 390]. After being discharged, Plaintiff returned for a follow-up visit with Dr. Grewal, who stated that Plaintiff reported "overall improvement since his discharge," but noted "chronic pain dependence." [Tr. 490]. Dr. Grewal indicated that Plaintiff still reported back pain, with symptoms in both legs and numbness and tingling present, and recommended that Plaintiff "increase ambulation and increase activity since his leg strength is improving." [*Id.*].

Dr. Grewal consulted with Plaintiff by telephone on November 25, 2015, and noted that Plaintiff was "not able to do [physical therapy] secondary to out of state status and not able to pay out of pocket PT expenses." [Tr. 509–10]. Dr. Grewal further reported that "[s]econdary to ongoing lumbar fusion, [Plaintiff ] is not a candidate for going back to work at this time." [Tr. 510]. However, Dr. Grewal advised Plaintiff "to increase ambulation and continue home based leg and back strengthening exercises." [*Id.*].

Plaintiff presented for a follow-up appointment with Dr. Grewal on February 22, 2016. [Tr. 511–12]. Dr. Grewal noted that Plaintiff "requires the use of significant pain medication," his ambulation is "still limited" as he "ambulates with a walker" and uses a back brace, and that Plaintiff still has numbness and tingling in the legs. [Tr. 511]. Dr. Grewal assessed that "as of now [Plaintiff] will [see] no significant improvement from the lumbar surgery," and recommended

"a CT scan to evaluate for a fusion." [Tr. 512]. Dr. Grewal stated that if the fusion was "solid on the CT scan," he would advise Plaintiff to discontinue the brace and increase motion of his lumbar spine. [Tr. 512]. Dr. Grewal further recommended a rolling walker with a seat so Plaintiff could walk longer distances to strengthen his legs. [*Id.*].

Lastly, Dr. Grewal stated that Plaintiff's "pain medications prescribed [were] secondary to difficulty in maintaining relationship with pain management," and he noted that because Plaintiff does not have Medicaid or live in New York, "he cannot get even physical therapy or other care in his home state." [*Id.*]. Therefore, Dr. Grewal opined that "[a]t his current level, [Plaintiff is] not a candidate to perform any kind of labor force work; not a candidate even for sedentary [work] at this point." [*Id.*].

The ALJ afforded little weight to Dr. Grewal's opinion given "in March of 2016[1]," that Plaintiff "cannot perform even sedentary work," as "it is inconsistent with [Plaintiff's] statement that he would be able to perform the job of a supervisor." [Tr. 16]. During the disability hearing, the ALJ questioned Plaintiff regarding his attempt to go back to work in 2013:

Q [ALJ]:   I saw where you had tried to go back to work and you told Dr. Silverman that it was a light, supervisory type job?

A [Plaintiff]:   Yes.

Q:   But then they asked you to do heavy manual labor and that was what you could not do. Is that correct?

A:   Physically I couldn't do the manual labor

Q:   If they had just stuck to the light supervisory work do you think you could have done that?

---

[1] While Dr. Grewal did not provide an opinion in March 2016, the Court notes that the ALJ cited to "Exhibit 13F at 5," which contains Dr. Grewal's findings from the February 22, 2016 follow-up appointment after Plaintiff's surgery. *See* [Tr. 511–12].

8

| A: | In a supervisory capacity probably. |
|---|---|
| Q: | Have you applied for any other supervisory type positions? |
| A: | No . . . Because physically I can't really get around that well. |

[Tr. 41–42].

Plaintiff asserts that the ALJ mischaracterized his testimony regarding his potential ability to work as a supervisor to support her assignment of little weight to Dr. Grewal's opinion. Moreover, Plaintiff maintains that the ALJ failed to acknowledge that Dr. Grewal had performed Plaintiff's lumbar decompression and lumbar fusion surgery and failed to discuss Dr. Grewal's status as a specialist. [Doc. 18 at 12–14]. Therefore, Plaintiff claims that Dr. Grewal's opinion should have been given more weight, due to his status as Plaintiff's treating physician[2], and that the overall reasons for assigning little weight to Dr. Grewal's opinion was based upon a mischaracterization of Plaintiff's testimony.

Conversely, the Commissioner contends that the ALJ properly accorded little weight to Dr. Grewal's opinion that Plaintiff could not perform sedentary work, as it was conclusory [Doc. 23 at 15–16], and that the ALJ properly noted that Dr. Grewal's opinion "was inconsistent with Plaintiff's statement that he would be able to perform the job of a supervisor." [*Id.* at 16]. Further, the Commissioner maintains that medical evidence did not support Dr. Grewal's opinion, and that the ALJ was "not required to articulate every regulatory factor set out in 20 C.F.R. § 404.1527." [*Id.* at 17].

---

[2] Ultimately, as the Commissioner failed to argue that Dr. Grewal did not qualify as a treating physician, the Court will address Plaintiff's argument under the treating physician rule. *See, e.g.*, *Amir v. Comm'r of Soc. Sec.*, 705 F. App'x 443, 446–47 (6th Cir. 2017) (analyzing weight given to plaintiff's orthopedic surgeon's opinion under treating physician rule).

9

In considering a claim of disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2).[3] However, the ALJ must do so only if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* If the opinion is not given controlling weight, as here, the ALJ must consider the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source," as well as "other factors." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527).

The ALJ is not required to explain how each of these factors was considered, but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight") (citing *Wilson*, 378 F.3d at 544; 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)).

Here, Plaintiff asserts that the ALJ's mischaracterization of his hearing testimony, which

---

[3] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* §§ 404.1527; 416.927.

10

was in essence, "wishful thinking of whether he could have performed other work at the time of the original injury," "should not be considered substantial evidence to eliminate the opinion of a qualified medical professional." [Doc. 18 at 14]. Moreover, Plaintiff insists that Dr. Grewal's opinion evidence should have been accorded greater weight as he was Plaintiff's orthopedic spine surgeon, who treated him since February 2015. [*Id.* at 13].

Ultimately, the Court concludes that the ALJ failed to properly evaluate Dr. Grewal's opinion pursuant to the treating physician rule. Further, the ALJ failed to provide good reasons for assigning Dr. Grewal's opinion less than controlling weight, as the only reason stated was the alleged inconsistency between his opinion and Plaintiff's testimony.

Specifically, the ALJ did not engage in the "two-step" evaluation process required for evaluating the opinions of treating physicians. *See Cadle v. Comm'r of Soc. Sec.*, No. 5:12-CV-3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). The ALJ failed to first determine whether Dr. Grewal's opinion deserved controlling weight by considering whether his opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). In *Gayheart*, the Sixth Circuit explained that although "the ALJ provided a modicum of reasoning" for assigning little weight to a treating source's opinion, these reasons were relevant to how the "opinions should be weighed *after* determining they were not controlling." *Id.* at 377. As this District has explained:

> Thus, in light of Sixth Circuit jurisprudence, the Court finds that the regulations require an ALJ to first articulate whether, and why, a treating source's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, *i.e.*, the controlling-weight test, and, second, to the extent the treating source's opinion is not entitled to controlling weight, the ALJ must then weigh the regulations' balancing

11

> factors—the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, the specialization of the source, and any other factors which tend to support or contradict the opinion—to determine the amount of weight the opinion deserves.

*Klusmeier v. Berryhill*, No. 3:16-cv-039, 2017 WL 1066641, at *6 (E.D. Tenn. Mar. 21, 2017).

In this case, the ALJ "shortcut the process," as the ALJ "did not explain whether [Dr. Grewal's] opinion was entitled to controlling weight or give any indication that it was first assessed for controlling weight before moving into the regulatory balancing factors." *Id.* The ALJ did not detail whether Plaintiff's treating orthopedic surgeon's opinion was supported by medically acceptable techniques or inconsistent with other substantial evidence. *See Hall v. Comm'r of Soc. Sec.*, No. 3:16-cv-171, 2017 WL 3574811, at *4 (S.D. Ohio Aug. 18, 2017) (collecting cases to find that "[t]he lack of an explanation of the controlling weight analysis is reversible error"). Rather, the ALJ solely stated that she assigned little weight to Dr. Grewal's opinion because it was inconsistent with Plaintiff's testimony about being able to perform a supervisory role. [Tr. 16]. As the Court stated in *Klusmeier*, the factor analyzing whether a medical opinion is consistent with the record as a whole is set forth in 20 C.F.R. § 404.1527(c)(4) and is "properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight." 2017 WL 1066641, at *6 (quoting *Gayheart*, 710 F.3d at 376); *see, e.g.*, *Smith v. Comm'r of Soc. Sec.*, No. 2017 WL 3124157, at *4 (S.D. Ohio July 24, 2017) (finding "the ALJ's reliance on Plaintiff's [testimony regarding] part-time work to undermine the entirety of" her treating physician's opinion is "misplaced," as "when specifically weighing Dr. Rowser's opinion, the ALJ provides no analysis of the controlling weight factors" and "the only reason specifically set forth by the ALJ in rejecting Dr. Rowser's opinions was the purported inconsistency between those opinions and

12

Plaintiff's testimony"), *report and recommendation adopted by*, 2017 WL 3412109 (S.D. Ohio Aug. 8, 2017).

The failure to provide "good reasons" for not giving a treating source's opinion controlling weight hinders a meaningful review of whether the ALJ properly applied the treating physician rule. *See Gayheart*, 710 F.3d at 377. While the Sixth Circuit has instructed that courts should not hesitate to remand a case when an ALJ fails to adhere to the treating physician rule, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004), remand is not necessary if violation of the "good reason" rule is harmless. *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011). Error is harmless when:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of [20 C.F.R.] § 404.1527(d)(2). . . even though she has not complied with the terms of the regulation.

*Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (citation omitted). "In the last of these circumstances, the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is indirectly attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Id.* (citing *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470–72 (6th Cir. 2006)).

The Court finds that the first two potential exceptions are not applicable in the present case. *See, e.g.*, *Bartolome v. Comm'r of Soc. Sec.*, No. 1:09-cv-712, 2011 WL 5920928, at *8 (W.D. Mich. Nov. 28, 2011) ("Though Dr. Braman's opinion is somewhat conclusory, it is not so contradictory to the evidence on record as to be 'so patently deficient that the Commissioner could not possibly credit it.'"). Further, the Court recommends that the District Judge find that the ALJ's

13

failure to provide good reasons for not assigning Dr. Grewal's opinion controlling weight was not harmless error, as the only stated reason for assigning little weight to Dr. Grewal's opinion was an alleged inconsistency with Plaintiff's testimony. *Cf. Klusmeier v. Berryhill*, No. 3:16-cv-039, 2017 WL 1066641, at *7 (E.D. Tenn. Mar. 21, 2017) (finding harmless error where the ALJ provided several good reasons for assigning limited weight to opinion of treating physician, including noting brief nature of treating relationship, nature and extent of the treating relationship, as well as stating that a finding that the plaintiff would be unable to complete an eight-hour workday is an issue reserved to the Commissioner).

While an ALJ is not required to explicitly discuss every factor under 20 C.F.R. § 404.1527(c)(2), the ALJ failed to mention any factor other than the purported inconsistency with Plaintiff's testimony. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). Plaintiff correctly states that the ALJ failed to discuss Dr. Grewal's specialization, treatment relationship with Plaintiff, or any additional factors regarding his opinion. *See Cummings v. Comm'r of Soc. Sec.*, No. 3:11-CV-614, 2013 WL 1192817, at *5–6 (E.D. Tenn. Mar. 22, 2013) (reasoning it could not be found that the ALJ "implicitly" discussed the relevant factors of the length of treatment relationship and the frequency of examination, as although the ALJ summarized the dates of treatment, "there is no indication that the ALJ considered those factors in determining what weight" to give to the opinion); *Bartolome*, 2011 WL 5920928, at *9 (failing to find the "rare case" constituting harmless error where the ALJ's subsequent discussion of contrary evidence "does not come from [the plaintiff's] medical records") (citing *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 262, 272 (6th Cir. 2006)).

While the Commissioner asserts that the ALJ properly accorded little weight to Dr. Grewal's "conclusory statement that Plaintiff could not perform even sedentary work" [Doc. 23 at

16], the Court nevertheless concludes that this constitutes a post-hoc rationalization in support of the ALJ's decision. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) ("A court cannot excuse the denial of a mandatory procedural requirement protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion . . . .") (internal citations omitted); *Schroeder v. Comm'r of Soc. Sec.*, No. 11–14778, 2013 WL 1316748, at *13 (E.D. Mich. Mar. 1, 2013) (finding the Commissioner's "post hoc rationalization" is not an acceptable substitute for the ALJ's failure to adequately evaluate the medical evidence), *report and recommendation adopted by*, 2013 WL 1294127 (E.D. Mich. Mar. 29, 2013).

Therefore, the ALJ did not meet the goal of the treating physician rule, and the ALJ's failure to provide good reasons for the weight assigned to Dr. Grewal's opinion was not harmless error. *See Cole v. Astrue,* 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.'") (citing *Hensley v. Astrue,* 573 F.3d 263, 267 (6th Cir. 2009)).

### 2. Ms. LaRocca

Plaintiff asserts that the ALJ failed to properly evaluate the opinion of Jenna LaRocca, PA-C. [Doc. 18 at 14–15]. Ms. LaRocca completed a Medical Source Statement on July 9, 2014 regarding Plaintiff's ability to perform physical work-related activities. [Tr. 273–78]. The Medical Source Statement noted that Plaintiff could occasionally lift and carry up to ten pounds; Plaintiff could sit, stand, and walk for one hour without interruption, but only for one-hour total in

15

an eight-hour workday; and Plaintiff "has to rotate between positions throughout the day to alleviate his pain." [Tr. 273–74]. Further, the Medical Source Statement indicated that Plaintiff did not require the use of a cane to ambulate [Tr. 274]; Plaintiff could occasionally climb stairs, ramps, ladders, or scaffolds; Plaintiff could occasionally stoop, kneel, crouch, or crawl; and Plaintiff could frequently balance [Tr. 276]. Lastly, the Medical Source Statement found that Plaintiff could perform activities like shopping; ambulate without using a wheelchair or walker; walk a block at a reasonable pace; use standard public transportation; climb a few steps at a reasonable pace without the use of a hand rail; prepare a simple meal and feed himself; care for his personal hygiene; and sort, handle, or use paper files. [Tr. 278]. However, Plaintiff was found not to be able to travel without a companion for assistance. [*Id.*].

The ALJ found that "[t]his opinion is given little weight because Ms. LaRocca is not an acceptable medical source and because Ms. LaRocca's limitations with regards to sitting, standing, and walking are inconsistent with [Plaintiff's] statements that he is able to go shopping in stores and statements that he is able to perform activities such as working out." [Tr. 16].

Plaintiff challenges the ALJ's assessment of little weight to Ms. LaRocca's opinion, claiming that the ALJ did not detail the context behind Plaintiff's treatment or expand upon the full findings of the opinion. [Doc. 18 at 15]. Further, Plaintiff alleges that his statements regarding working out or going shopping at stores do not "rebut[ ] the opinion" of Ms. LaRocca, as Plaintiff stated that he planned to work out regularly before his condition worsened after his surgery. [*Id.*]. Additionally, although Plaintiff listed shopping in stores in his Adult Function Report, he claims that he stated that he only shops for groceries for "1/2 hr" and "not often." *See* [Tr. 224].

Under the Social Security regulations, a physician's assistant is not an "acceptable medical source" that can provide evidence to establish the existence of a medically determinable

16

impairment.  *See* 20 C.F.R. §§ 404.1513(a); *see Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397–98 (6th Cir. 2014) ("Other sources include, but are not limited to . . . medical sources not listed [as acceptable medical sources] (for example, nurse practitioners, physicians' assistants, . . . [and] therapists).") (quoting 20 C.F.R. § 404.1513(d)(1)).  However, an ALJ cannot reject an opinion merely because the source is not an acceptable source.  *See Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 541 (6th Cir. 2007) (stating that Social Security Ruling 06–03p does not permit an ALJ to reject a source merely because the source is not listed as an "acceptable medical source").  As an "other source," a physician's assistant's opinion is "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  Soc. Sec. Rul. 06–03p, 2006 WL 2329938, at *3 (Aug. 9, 2006).

"The extent to which a physician assistant's opinion is consistent with the record as a whole is a factor in determining how much weight to give that opinion."  *Scruggs v. Colvin*, No. 2:15-058, 2016 WL 6110457, at *4 (M.D. Tenn. Sept. 29, 2016) (citing *Irvin v. Comm'r of Soc. Sec.*, 573 F. App'x 498, 501 (6th Cir. 2014)), *report and recommendation adopted by*, 2016 WL 6094370 (M.D. Tenn. Oct. 19, 2016).  Here, the ALJ summarized Ms. LaRocca's opinion and assigned it little weight, noting Ms. LaRocca's status as "not an acceptable source" and finding that it was inconsistent with Plaintiff's statements regarding his activities of daily living.  [Tr. 16]; *see, e.g.*, *Eaberlin v. Astrue*, No. 09-CV-08-KKC, 2010 WL 1485540, at *5 (E.D. Ky. Apr. 12, 2010) (finding the ALJ's assignment of little weight to the opinion of a physician's assistant was supported by substantial evidence because the ALJ "noted [the] opinion was not binding" and "considered the opinion, ultimately rejecting it because it was inconsistent with the overall medical evidence with the record and portions of [Plaintiff's] testimony").

17

While Plaintiff challenges the ALJ's depiction of his statements regarding his activities of daily living, treatment notes from Patricia Mahoney, M.D., at Cherokee Health Systems on October 9, 2014 state that Plaintiff "plans to workout regularly." [Tr. 372]. Further, Plaintiff reported in his Adult Function Report on November 5, 2014, that he does shop for groceries with his fiancé for thirty minutes, although not often. [Tr. 224]. Ultimately, the ALJ identified an inconsistency in the record that she found in contrast to Ms. LaRocca's assessed limitations. *See, e.g.*, *Tacas v. Astrue*, No. CIV-S-09-2144-EFB, 2011 WL 1253224, at *5 (E.D. Cal. Mar. 31, 2011) ("Plaintiff challenges the [ALJ's assignment of little weight to the opinion of another source due to being contradicted by plaintiff's testimony] as improper, arguing that even though she testified that she could lift twenty pounds at the hearing, she did not mean that she could lift that much weight all day in a competitive work environment. Thus, she argues, testimony is not inconsistent with [the physical therapist's] opinion that plaintiff was limited to lifting only up to five pounds. Nonetheless, the conflict still exists and plaintiff's attempt to lessen its significance with that explanation does not render the conflict nonexistent.").

Accordingly, the Court finds substantial support in the record for the ALJ's assignment of little weight to Ms. LaRocca's opinion. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) ("Thus, the ALJ properly considered the [therapist's] opinion as an 'other source' and explained her reasons for giving it 'little to no weight.'").

### 3. Dr. Bailey

Next, Plaintiff contends that the ALJ improperly afforded "some weight" to the opinion of consultative examiner William Bailey, M.D., who evaluated Plaintiff approximately one year prior to Plaintiff's discectomy, laminectomy, and lumbar fusion. [Doc. 18 at 16].

Dr. Bailey performed a consultative examination on August 11, 2014. [Tr. 318–27]. Dr. Bailey reported that Plaintiff described back pain and left knee pain. [Tr. 318]. Additionally, Dr. Bailey reviewed "some records from New York," as well as an October 2013 MRI report. [*Id.*]. On examination, Dr. Bailey determined that Plaintiff "has significant pain behaviors upon standing and examining him," and that "[u]pon standing[,] he shows only 25 degrees forward flexion and 10 degrees extension in the lumbar spine," with similar "decreased cervical flexibility which is reproducing his lower back pain" and "decreased range of motion in both shoulders." [*Id.*].

Based on the examination and review of records, Dr. Bailey assessed the following limitations: Plaintiff could continuously lift and carry up to ten pounds, frequently lift eleven to twenty pounds, and never lift above twenty-one pounds; Plaintiff could sit, stand, and walk for one hour without interruption; and Plaintiff could sit for six hours total in an eight-hour work day, and stand or walk for two hours total in an eight-hour work day. [Tr. 322-23]. Dr. Bailey noted that Plaintiff did not require the use of a cane to ambulate. [Tr. 323], and opined that Plaintiff could frequently climb stairs and ramps as well as balance, and that Plaintiff could occasionally climb ladders or scaffolds, stoop, kneel, crouch, and crawl. [Tr. 325]. Further, Dr. Bailey noted that he assessed these limitations due to Plaintiff's herniated lumbar disc. [Tr. 322].

The ALJ first summarized Dr. Bailey's opinion stating that "[Plaintiff] can lift up to 20 pounds" and "has a greatly limited ability to sit, stand, and walk, and has some postural limitations." [Tr. 16]. The ALJ then assigned some weight to Dr. Bailey's opinion, finding that his "opinion is given some weight because Dr. Bailey had the opportunity to examine the claimant," but "greater weight is not given to his opinions because [Plaintiff's] poor ambulation is more consistent with a more limited ability to lift and carry." [*Id.*].

19

Plaintiff asserts that the ALJ improperly afforded some weight to the opinion, as the ALJ failed to explain why she did not incorporate findings from Dr. Bailey's opinion that were favorable to Plaintiff's claim, including the finding that "[Plaintiff] is under the influence when he takes pain medication," and that the ALJ failed to recognize that Dr. Bailey's opinion was based on an incomplete medical record. [Doc. 18 at 16]. The Commissioner maintains that the ALJ properly accounted for the potential side effects of Plaintiff's medication noted in Dr. Bailey's opinion, and, as a consultative examiner, Dr. Bailey was not required to review the entire record. [Doc. 23 at 19–20].

Opinions from nontreating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). Additionally, an ALJ is only required to provide good reason for explaining the weight assigned to the opinion of a "treating source." 20 C.F.R. §§ 404.1527(c) and 416.927(c)(2); *see Perry v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012) ("An ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who, like Dr. Pickering, have examined but not treated a claimant."). Opinions from one-time consultative examiners are not due any special degree of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The government is required to provide any consultative examiner with background information regarding the claimant's alleged symptoms. 20 C.F.R. § 404.1517. However, the

20

regulation "does not place an imperative on the agency to provide a consultative examiner with a full medical record, but only explains that '[w]e will also give the examiner any necessary background information about your condition.'" *Grant v. Colvin*, No. 3:14-cv-399, 2015 WL 4713662, at *13 (E.D. Tenn. Aug. 7, 2015) (quoting 20 C.F.R. § 404.1517). Dr. Bailey's opinion was based upon a review of certain medical records, an interview with Plaintiff, and a physical examination. Importantly, Plaintiff does not argue that the ALJ failed to discuss the records he claims that Dr. Bailey did not review. Therefore, Plaintiff's contention that Dr. Bailey did not review the complete record does not constitute a basis for remand. *See id.* at *13 ("If the Court were to adopt the Plaintiff's argument, any consultative examiner should be summarily dismissed if their opinion was submitted without full review of a plaintiff's medical record or predated any treatment records. The Court is unaware of such a rule and finds no error in the weight assigned [to the consultative examiner]."); *see also Maher v. Berryhill*, No. 3:16-0904, 2018 WL 652869, at *5 (M.D. Tenn. Jan. 11, 2018) ("However, failure to review a claimant's complete medical history, by itself, does not represent reversible error, as such a holding would allow a claimant to seek treatment following completion of a consultative examination and later argue that the consultative examiner's findings failed to account for her subsequent treatment."), *report and recommendation adopted by*, 2018 WL 646405 (M.D. Tenn. Jan. 11, 2018).

Next, Plaintiff claims that "the ALJ failed to incorporate favorable findings of Dr. Bailey." [Doc. 18 at 16]. Specifically, Plaintiff asserts that the ALJ failed to incorporate portions of Dr. Bailey's opinion finding that Plaintiff could only sit one hour at a time, and that Plaintiff "is under the influence when he takes pain medication." *See* [Tr. 319]. First, the ALJ noted Dr. Bailey's opinion that Plaintiff "has a greatly limited ability to sit," and restricted Plaintiff to sedentary work. [Tr. 16]. However, the ALJ only assigned only some weight to Dr. Bailey's opinion, and would

21

not be required to incorporate all limitations assessed in the opinion even if she had assigned it great weight. *See Bennett v. Colvin*, No. 3:13-cv-1176, 2015 WL 153950, at *13 (M.D. Tenn. Jan. 12, 2015) ("[A]n ALJ who accords 'great weight' to an opinion is not required to adopt that opinion wholesale."); *Moore v. Comm'r of Soc. Sec.*, No. 1:13-cv-00395, 2013 WL 6283681, at *7 (N.D. Ohio Dec. 4, 2013) ("[T]he fact that [the ALJ] gave 'great weight' to [the consultative examiner's] opinion does not mean that he was required to adopt it wholesale [as] [t]he issue of RFC is reserved to the Commissioner . . . .") (internal citation omitted).

Ultimately, the ALJ did not assign great weight to Dr. Bailey's opinion, as she found that Plaintiff had a more limited ability to lift and carry, due to his poor ambulation. Further, the ALJ noted Dr. Bailey's examining relationship with Plaintiff, one of the regulatory balancing factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). [Tr. 16]. "To the extent that the ALJ rejected portions of the . . . opinion[ ], the ALJ was not required to state any 'good reasons' for rejecting any opinions of the consultative examiners because they are not treating physicians." *Burton v. Astrue*, No. 5:12-208-DCR, 2013 WL 85073, at *6 (E.D. Ky. Jan. 7, 2013) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Accordingly, the Court finds that the ALJ properly weighed the applicable statutory factors and explained the basis for affording little weight to Dr. Bailey's opinion.

### 4.    Dr. Silverman

Plaintiff challenges the ALJ's assignment of great weight to the opinion of his treating physician, Brett Silverman, D.O. [Doc. 18 at 16–17]. Plaintiff asserts that the ALJ failed to mention that Dr. Silverman's assessments that Plaintiff could do "light duty work at a moderate level . . . [but] should not be doing any lifting more than 10 pounds" or overall perform a light duty job were "made in late 2013 and the spring of 2014, months before his referral to surgeon Dr.

22

Grewal." [Doc. 18 at 16]. Additionally, Plaintiff claims that the ALJ improperly failed to mention that Dr. Silverman noted before his surgery that "postoperative his work status will be deferred to his surgeon." [*Id.* at 17]; *see* [Tr. 492–93]. The Commissioner contends that Dr. Silverman "opined through February 2015 that [Plaintiff] could work and was only unable to perform his past demolition/construction work," and that Dr. Silverman's opinion "addressed Plaintiff's status related to his upcoming surgery." [Doc. 23 at 15].

Here, the ALJ assigned great weight to the medical opinions of Dr. Silverman. [Tr. 15]. First, the ALJ noted that Dr. Silverman opined that Plaintiff can perform light level work at a moderate level, cannot lift more than ten pounds, and cannot work demolition or construction work. [*Id.*]. The ALJ explained that Dr. Silverman's opinions were accorded great weight because he had treated Plaintiff for several years and was "very familiar with [Plaintiff's] impairments," and that the opinions were consistent with Plaintiff's allegations that "he is able to perform activities such as working out . . . and go shopping in stores." [Tr. 16-17].

As the Court has previously stated, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2). Under the treating physician rule, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians . . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). The rationale for the rule is that treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Id.* (citing 20 C.F.R. § 416.927(d)(2)).

The Court finds that the ALJ's determination to afford great weight to the opinion of Plaintiff's treating physician, Dr. Silverman, is supported by substantial evidence. Although

23

Plaintiff claims that the ALJ did not acknowledge that Dr. Silverman's opinions were given prior to his referral to Dr. Grewal for surgery, the ALJ detailed Dr. Silverman's medical opinions from March 6, 2013 [Tr. 313] through February 4, 2015 [Tr. 503]. Importantly, Plaintiff's alleged onset date was December 23, 2012, thus, Dr. Silverman's opinions cover the relevant time period in which Plaintiff claims he was disabled. Although Plaintiff challenges the assignment of great weight to Dr. Silverman's opinion that Plaintiff can perform light work, the Court notes that the ALJ ultimately found that Plaintiff could perform sedentary work. [Tr. 13].

Therefore, the ALJ properly reviewed Dr. Silverman's opinions from the relevant time period, noted Dr. Silverman's treatment relationship with Plaintiff, and afforded Dr. Silverman's opinions great weight in accordance with the treating physician rule. However, to the extent that Plaintiff alleges that the ALJ failed to distinguish Dr. Grewal's treating relationship after surgery, the Court finds that such arguments are covered by the recommendation for remand for further consideration of Dr. Grewal's opinion.

## 5.    Dr. Bijpuria

Lastly, Plaintiff claims that the ALJ improperly afforded great weight to the opinion of nonexamining state agency consultant Murari Bijpuria, M.D., as "this doctor lacked essential records that could have impacted his RFC." [Doc. 18 at 17]. Specifically, Plaintiff asserts that Dr. Bijpuria did not review a 2015 MRI performed at the request of Dr. Silverman on February 4, 2015, finding "multilevel degenerative disc disease with Grade 1 anterior spondylolisthesis," as well as "moderate central stenosis" [Tr. 502], in addition to treatment records from Dr. Grewal [Tr. 499–500, 512], records related to Plaintiff's lumbar surgery [Tr. 390], and records documenting the failure of non-operative options and Dr. Silverman's reference to Plaintiff being disabled [Tr. 492–93]. [Doc. 18 at 17]. The Commissioner contends that the ALJ properly

24

considered "the physicians' [opinions] in light of the record as a whole, including subsequent medical evidence." [Doc. 23 at 20].

Dr. Bijpuria reviewed the evidence of record at the reconsideration levels of the agency's review, and opined on February 3, 2015, that Plaintiff could occasionally lift or carry twenty pounds, and could frequently lift or carry ten pounds. [Tr. 97]. Further, Dr. Bijpuria found that Plaintiff could stand or walk for two hours of an eight-hour workday, as well as sit for a total of six hours of an eight-hour workday. [*Id.*]. Lastly, Dr. Bijpuria opined that Plaintiff could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, but that Plaintiff could never climb ladders, ropes, or scaffolds. [*Id.*]. The ALJ afforded great weight to Dr. Bijpuria's opinion, finding that the opinion that Plaintiff "is limited to the sedentary exertional level with additional postural limitations . . . is consistent with the record which shows that [Plaintiff] has a limited range of motion in his spine and has an antalgic gait." [Tr. 16].

"[A]n ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater weight to an opinion that is not based on the full record." *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493–94 (6th Cir. 2016) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)). In *Spicer*, the Sixth Circuit found that the ALJ had satisfied *Blakley* by reviewing the medical evidence that was entered after the nonexamining state agency consultant's opinion and explaining why the consultant's opinion was afforded greater weight despite the subsequent evidence. *Id.* Similarly, in order for an ALJ to provide "'some indication' that he 'at least considered' that the source did not review the entire record . . . the record must give some indication that the ALJ subjected such

25

an opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (quoting *Blakley*, 581 F.3d at 409).

In the present case, Plaintiff correctly asserts that Dr. Bijpuria reviewed an incomplete record, including all additional medical evidence after February 3, 2015. However, the ALJ's decision reflects that she made an independent determination based on all the medical evidence and that her analysis spanned the entire record. *See Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 247–48 (6th Cir. 2016) (affirming ALJ's assessment of great weight to the dated nonexamining state agency consultant's opinion, rather than the current treating physician opinion found to be inconsistent with the record, as "the ALJ's own analysis clearly spanned the entire record—through the final degenerative changes to [Plaintiff's] spine that culminated in a cervical discectomy and fusion, the last medical event included in the record"); *accord Mcwhorter v. Berryhill*, No. 3:14-cv-1658, 2017 WL 1364678, at *12 (M.D. Tenn. Apr. 14, 2017); *Quinlavin v. Comm'r of Soc. Sec.*, No. 15-cv-731, 2017 WL 583722, at *4 (N.D. Ohio Feb. 14, 2017).

As the Court has previously discussed, the ALJ reviewed Dr. Grewal's opinion completed after Dr. Bijpuria reviewed the record, and noted that "Plaintiff underwent a discectomy, laminectomy, and lumbar fusion surgery." [Tr. 14]. The ALJ also detailed that Plaintiff demonstrated an antalgic gait, citing to treatment notes from Dr. Grewal on February 22, 2016. [Tr. 15]; *see* [Tr. 512]. Further, the ALJ reviewed the February 4, 2015 MRI, as she cited to "imaging taken of [Plaintiff's] lumbar spine and shoulder [that] show degenerative changes." [Tr. 14]; *see* [Tr. 501]. While Plaintiff claims that this "later 2015 MRI was significant as it was reviewed and then surgery was performed," [Doc. 18 p. 17], the ALJ cited to the MRI and detailed that Plaintiff subsequently had surgery. Ultimately, the ALJ cited to medical records from both before and after Dr. Bijpuria's opinion to find that Plaintiff has an antalgic gait, tenderness upon

26

palpitation of the spine, limited range of motion in his spine and left shoulder, positive straight leg tests, as well as lumbar radiculopathy. [Tr. 15].

Further, the ALJ properly evaluated and differentiated Dr. Bijpuria's opinion with the opinion of Dr. Stuart Stephenson, the nonexamining state agency consultant who reviewed the record at the initial level of the state agency's review. The ALJ found that Dr. Stephenson's opinion that Plaintiff is limited to the light exertional level was only entitled to some weight because Plaintiff's "antalgic gait is more consistent with the walking and lifting limitations associated with the sedentary exertion level." [Tr. 16]; *cf. Gray v. Berryhill*, No. 5:17-cv-380-EBA, 2018 WL 1916347, at *7 (E.D. Ky. Apr. 23, 2018) (holding an ALJ failed to indicate that nonexamining state agency consultants did not review a complete case record, as the ALJ "only mentions Dr. Meyer's opinion by stating, '[t]he [ALJ] accords great weight to the opinions of the State agency medical consultants because the opinions are supported by the overall evidence'"). In *Kepke*, the Sixth Circuit found that the ALJ subjected the opinions of two nonexamining state agency physicians to some scrutiny, as "the ALJ disagreed with [one of the nonexamining physician's] assessment[s] of Kepke's limitations in her activities of daily living and social functioning, and applied even greater restrictions in this area than [the nonexamining state agency physician] opined were appropriate." 636 F. App'x 625, 632 (6th Cir. 2016).

Accordingly, although the nonexamining state agency consultants did not review a complete record, "the ALJ's own analysis clearly spanned the entire record." *See Gibbens*, 659 F. App'x at 247–48. Therefore, the ALJ "subjected [Dr. Bijpuria's] opinion to scrutiny" sufficient to find that she considered that the nonexamining state agency consultant did not review the entire record. *See Kepke*, 636 F. App'x at 632. Although the Court finds that the ALJ properly subjected Dr. Bijpuria's opinion to scrutiny, as the Court has already recommended that the ALJ's decision

be remanded for a reconsideration of Dr. Grewal's opinion, and upon remand, the ALJ should ensure that she considers the fact that the nonexamining state agency consultants did not review a complete case record and that she documents Plaintiff's condition after his surgery.

### B. Use of an Assistive Device

Plaintiff asserts that the ALJ failed to account for his use of a walker in the RFC determination, despite the fact that his need for a walker was medically supported throughout the record. [Doc. 18 at 17–20]. Plaintiff claims that he testified about his need for a walker during the disability hearing, that a rolling walking with a seat was prescribed by Dr. Grewal, and, prior to the prescription, he had been using a walker with wheels in the front. Although he admits that Dr. Grewal stated that the walker was intended to improve his "ambulatory status," Plaintiff maintains that he told his doctors he consistently was unable to find a physical therapist, and Dr. Grewal's statement does not indicate that Plaintiff would not need an assistive device. [*Id.* at 19]. Next, Plaintiff asserts that "treatment notes following his surgery reference his need for, and use of, a walker." [*Id.*]. Lastly, Plaintiff claims that VE testimony demonstrates "that Plaintiff would not even be capable of sedentary work if he had to use a walker for the two hours of standing." [*Id.*].

The Commissioner responds that the ALJ properly excluded the use of an assistive device from the RFC, as "no medical documentation established a need for [a] cane." [Doc. 23 at 22]. Additionally, the Commissioner asserts that treatment notes following Plaintiff's surgery demonstrate that he was not instructed to use an assistive device. Ultimately, the Commissioner argues that "Plaintiff did not require a walker after his surgery; he first reported the use of a walker (by telephone) to Dr. Grewal four months after his surgery; no diagnostic imaging or physical

28

examination established a need for a walker; and Dr. Grewal only prescribed a rolling walker in February 2016 to increase Plaintiff's ambulation and strength." [*Id.*].

The ALJ first discussed Plaintiff's need for an assistive device by noting that Plaintiff testified during the disability hearing "that he needs a walker in order to ambulate." [Tr. 14]. Then, the ALJ noted that Plaintiff admitted that he has not been compliant with his home-based physical therapy and has not attempted to walk more, as directed by his doctor, to improve ambulation. [Tr. 15]. Lastly, the ALJ detailed how Plaintiff "admitted that [Dr. Grewal] prescribed a walker in order for him to improve his ability to [walk] and increase in his ambulation. However, he did not use it as directed to improve his ability to ambulate." [*Id.*].

Social Security Ruling 96-9p provides the operative law on this point:

> **Medically required hand-held assistive device**: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

1996 WL 374185, at *7 (July 2, 1996). The Sixth Circuit has explained that unless a cane or other assistive device is found to be a necessary device, it will not be considered an exertional limitation that reduces a claimant's ability to work. *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002). "SSR 96–9p requires medical documentation of the need for the assistive device, not just a suggestion by a doctor relating to a claimant's continued use of an assistive device that the claimant purchased on his or her own." *Perry v. Berryhill*, No. 1:16-CV-2970, 2018 WL 1393275, at *4 (N.D. Ohio Mar. 20, 2018); *see Parrish v. Berryhill*, No. 1:16-CV-1880, 2017 WL 2728394, at *12 (N.D. Ohio June 8, 2017) ("While there are some indications in the medical records that

29

Plaintiff was using a cane, this is insufficient to establish that the cane was medically required. Nor does Plaintiff cite to any medical records describing the circumstances for which a cane is needed as required by SSR 96–9p.") (collecting cases), *report and recommendation adopted by*, 2017 WL 2720332 (N.D. Ohio June 23, 2017).

However, in the present case, the ALJ did not properly apply Social Security Ruling 96-9p, as the ALJ did not determine whether Plaintiff's walker was medically necessary. Plaintiff correctly states that the "while the ALJ mentioned his walker in passing other places in the decision . . . she did not properly account for his use of a walker in her RFC [determination]." [Doc. 18 at 18]; *see Dillon v. Berryhill*, No. 3:17-cv-597, 2018 WL 3521403, at *7 (D. Nev. June 18, 2018) ("Here, there is medical evidence in the record of a need for a walker since it was prescribed by Plaintiff's treating physician, who noted it was helpful, but there is no other specific information regarding the circumstances for which it is needed, and the ALJ did not develop the record in this regard."), *report and recommendation adopted by*, 2018 WL 3518456 (D. Nev. July 19, 2018). There were numerous references to Plaintiff's use and eventual prescription of a walker by Dr. Grewal throughout the medical record. *Dow v. Comm'r of Soc. Sec.*, No. 1:13-CV-493, 2014 WL 4377820, at *5 (S.D. Ohio Sept. 4, 2014) ("Where the use of a walker is part of the record, the ALJ is obligated to consider whether this factor would have an impact on the plaintiff's RFC."). Further, the ALJ specifically noted that Plaintiff was "prescribed a walker," albeit while noting that the walker was prescribed to increase Plaintiff's ambulation. [Tr. 15].

Although the ALJ found that Plaintiff had not been compliant with his prescribed treatments, the ALJ ultimately did not analyze whether an assistive device was medically necessary. *See Penn v. Astrue,* No. 2:09–CV–169, 2010 WL 547491, at *6 (S.D. Ohio Feb. 12, 2010) ("The consistent reference to the use of a cane (or a walker) . . . is enough to trigger an

30

obligation on the part of the Commissioner to decide if such use is medically necessary and, if so, to have included that factor in the RFC analysis."). Accordingly, the ALJ did not indicate that "she specifically considered how plaintiff's use of a walker would impact [his] ability to perform the lifting/carrying and standing/walking requirements," or "fulfill her obligation whether plaintiff's use of a walker would impact plaintiff's ability to perform the jobs identified by the VE." *See Dow*, 2014 WL 4377820, at *6.

Therefore, the ALJ erred by failing to examine Plaintiff's need for a walker in the RFC determination or in her determination that a significant number of jobs existed in the national economy that Plaintiff could perform given that RFC. On remand, the ALJ should examine Plaintiff's need for an assistive device; and if an assistive device is found to be required, the ALJ should examine the impact of Plaintiff's need for a walker on the jobs identified by the VE.

### C. Plaintiff's Subjective Allegations

Plaintiff claims that the ALJ failed to properly weigh his subjective allegations regarding pain and his symptoms. [Doc. 18 at 20–25]. However, the Commissioner asserts that the ALJ properly considered Plaintiff's treatment history, diagnostic imaging and examination findings, and symptoms. [Doc. 23 at 25].

In the disability decision, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause *some* of the alleged symptoms," but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [Tr. 14]. The ALJ noted that Plaintiff has physical limitations due to his degenerative disc and joint disease, and, thus, Plaintiff is properly limited to the sedentary exertional level with additional postural limitations. [Tr. 15].

31

Specifically, the ALJ found that the record does not support the degree of Plaintiff's claimed physical limitations, as Plaintiff has been noted to have full strength and a normal range of motion in all extremities, as well as intact sensation to light touch. [*Id.*]. Further, the ALJ detailed that Plaintiff has not been compliant with his prescribed treatments, as he admitted he has not attempted his home-based physical therapy or attempted to walk more. [*Id.*]. The ALJ also noted that Plaintiff's statements with regard to his own physical activities do not support his claimed limitations, as Plaintiff stated he planned to work out regularly, that he was able to ride in a car from New York to Tennessee, and that he is able to go shopping in stores. [*Id.*]. Finally, the ALJ emphasized that during the hearing, Plaintiff stated that he would be able to perform a job as a supervisor, but could not do manual labor. [*Id.*].

Social Security Ruling 96-7p articulates the standard for evaluating a claimant's subjective allegations, including those regarding pain, as follows.

> [O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.

1996 WL 374186, at *2 (July 2, 1996).[4] When objective medical evidence fails to substantiate a claimant's subjective allegations regarding the intensity, persistence, or functional effects of pain, the ALJ must make a credibility finding based on the entire case record. *Id.*

---

[4] At the time of the ALJ's decision, SSR 96-7p, 1996 WL 374186 (July 2, 1996), governed the ALJ's analysis of the credibility of Plaintiff's statements concerning her symptoms. That ruling was later superseded by SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), which eliminated the use of the term "credibility" in order to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029 at *1. However, "[b]ecause the text of SSR 16-3p does not indicate the SSA's intent to apply it retroactively," the Court will rely upon SSR 96-7p. *See Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

32

Moreover, and in addition to considering objective medical evidence, the ALJ must consider the following factors in assessing a claimant's credibility: (1) daily activities; (2) the location, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (5) treatment, other than medication, received or have received for relief of pain or other symptoms; (6) any measures that are used or were used to relieve pain or other symptoms; (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *Id.* at *3 (citing 20 C.F.R. § 404.1529(c)).

The ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). However, the ALJ's finding must be supported by substantial evidence. *Id.* Finally, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.*

Here, Plaintiff first maintains that the ALJ "mischaracterized" the medical record regarding his subjective allegations, as well as "selectively presented details" about Plaintiff's daily activities. [Doc. 18 at 21]. In particular, Plaintiff alleges that the ALJ failed to distinguish that months before his surgery, Plaintiff may have expressed a desire to work out, but that he was unable to do so after undergoing surgery. Additionally, Plaintiff claims that although the ALJ relied upon his statement regarding going shopping with his wife, he had stated that he was only able to go about once a month, for under thirty minutes. [*Id.*].

While Plaintiff contests the ALJ's use of daily activities in assessing his credibility, the regulations advise the ALJ to consider an individual's daily activities when evaluating a

33

claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). In this case, the ALJ does not appear to have mischaracterized Plaintiff's description of his daily activities. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248–49 (6th Cir. 2007) (finding an ALJ's use of plaintiff's daily activities to question her credibility was inappropriate because the ALJ mischaracterized the plaintiff's testimony regarding the scope of her daily activities). The ALJ identified several of Plaintiff's daily activities which suggest that he is not as limited as he alleged, in addition to Plaintiff's statements regarding his plan to work out regularly and going shopping with his wife. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) (finding an ALJ may consider a plaintiff's daily activities in evaluating the credibility of allegations of disabling symptoms). Moreover, the ALJ did not rely solely on Plaintiff's daily activities when assessing his credibility. The ALJ also considered the extent to which Plaintiff's allegations of disabling pain were inconsistent with the objective medical evidence. *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2003) ("[T]he ALJ did not give undue consideration to Temples' ability to performing day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples' testimony was credible.").

Next, Plaintiff contends that the ALJ failed to consider his testimony that his pain has worsened since undergoing surgery [Doc. 18 at 21], his "persistent efforts to seek treatment for his pain and other symptoms" [*Id.* at 22], and the side effects of his medication [*Id.* at 23]. However, the ALJ noted Plaintiff's surgery, as well as cited to medical records showing Plaintiff's antalgic gait after surgery. [Tr. 14–15]. Further, although Plaintiff sought consistent treatment for his pain, the ALJ properly noted that Plaintiff failed to comply with his home-based physical therapy and instruction by Dr. Grewal to walk more. [Tr. 15]; *see Baker v. Colvin*, No. 3:12-479, 2015 WL 1013981, at *12 (M.D. Tenn. Mar. 9, 2015) (affirming ALJ's credibility finding, as plaintiff "was

34

not entirely compliant with her home exercise program" or physical therapy), *report and recommendation adopted by*, 2015 WL 1546360 (M.D. Tenn. Apr. 6, 2015).

Plaintiff claims that he was unable to afford physical therapy, or find a therapist who accepted his out-of-state insurance. [Doc. 18 at 25]. Social Security Ruling 96–7p provides that an ALJ "must not draw any inferences about an individual's symptoms . . . from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide," such as that an "individual may be unable to afford treatment and may not have access to free or low-cost medical services." SSR 96–7p, 1996 WL 374186, at *7–8 (July 2, 1996). However, contrary to Plaintiff's claims that he was unable to find a physical therapist who accepted his insurance, the ALJ properly detailed that it is likely that Plaintiff's condition would improve if he was compliant with his doctor's directives; including home based physical therapy and increased walking, two directives that could be performed without visiting a physical therapist. [Tr. 15]. Additionally, the ALJ noted that Plaintiff "has been prescribed prescription painkillers" as a reason for limiting Plaintiff to the sedentary exertional level with additional postural limitations. [*Id.*].

Lastly, Plaintiff challenges the ALJ's depiction of various "medical treatment notes," as the ALJ did not offer "the proper context of pre and post-operative symptoms and limitations." [Doc. 18 at 24]. However, Plaintiff cites to the ALJ's treatment of the medical opinions of record, rather than the ALJ's credibility determination. [*Id.* (citing [Tr. 16])]. The Court notes that, on remand, the ALJ could more clearly detail Plaintiff's medical record before and after his lumbar fusion surgery, particularly in light of Plaintiff's claim that his pain increased after his surgery. However, even eliminating this reason, the remainder of the reasons provided by the ALJ provide a sufficient basis for the ALJ's decision to discount Plaintiff's credibility. *See, e.g.*, *Garcia v.*

35

*Comm'r of Soc. Sec.*, No. 1:16-CV-2682, 2018 WL 838371, at *14 (N.D. Ohio Feb. 12, 2018).

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531 (internal citation omitted). The Sixth Circuit has held that the Court must accord great deference to an ALJ's credibility assessment, particularly "because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (internal citations omitted). In the present case, the ALJ properly evaluated Plaintiff's credibility pursuant to the applicable regulations and policies. *See* 20 C.F.R. § 404.1529; Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996). Specifically, the ALJ detailed the various factors that she considered in her credibility assessment, including inconsistencies between Plaintiff's subjective allegations and the objective medical evidence, Plaintiff's reported daily activities, Plaintiff's statements that were inconsistent with the medical evidence of record, and Plaintiff's noncompliance with his prescribed treatments. Therefore, the ALJ complied with the regulations, and her credibility determination is supported by substantial evidence.

## VI. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS**[5] that Plaintiff's Motion for Summary Judgment [**Doc. 17**] be **GRANTED IN PART**, and the Commissioner's Motion for Summary

---

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

36

Judgment [**Doc. 22**] be **DENIED** for the reasons stated herein.  The Court **RECOMMENDS** the

matter remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further

proceedings consistent with this Report & Recommendation.


                                        Respectfully Submitted,

                                        _Debra C. Poplin_
                                        Debra C. Poplin
                                        United States Magistrate Judge


37